

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

Friday, November 01, 2013

*Via EFC and email to:* <u>Robert_Monteagudo@nysd.uscourts.gov</u>

Honorable Robert P. Patterson
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: *United States v. Cheryl O'Connor*,
        13 Cr. 288 (RPP)

Dear Judge Patterson:

    The Government respectfully submits this letter in response to the defendant's sentencing submission which asks that the Court not impose a sentence within the stipulated guideline range identified in her plea agreement (24 to 30 months imprisonment), but rather, to impose a non-custodial non-Guideline sentence pursuant to 18 U.S.C. § 3553(a). The Government objects and requests that the Court impose a sentence of imprisonment within the Stipulated Range (24-30 months) for the reasons identified by the Probation Office at pages 24-25 of the September 30, 2013 Presentence Investigation report (PSR) under the heading "Justification" and as set forth herein. Additionally, as discussed below, the Government requests that the Court impose a lump sum restitution payment order in the amount of $183,488, the restitution amount the defendant agreed to in the plea agreement.*

---

\*   According to the PSR, the defendant has cash on hand in the amount of $185,149.54 in accounts at HSBC Bank (PSR ¶ 62), and has asked that the Court take into consideration in sentencing her that her agreement to pay restitution in this matter "will surely wipe out most, if not all of her savings for old age." September 30, 2013 Letter to the Court from Florian Miedel, p. 3.

Hon. Robert P. Patterson, USDJ                                                                Page 2
November 1, 2013

## Offense Conduct

The defendant Cheryl O'Connor, as the owner of a tax return preparation business Technical Support II (TSII) which she operated out of her residence in the Bronx, New York, prepared numerous false tax returns for the 2007 through 2009 tax periods resulting in substantial Federal and State tax losses. For the years 2007 through 2009, O'Connor prepared and filed more than 3,000 tax returns on behalf of TSII clients.

In preparation of the Special Agent's Report for the prosecution of O'Connor, the IRS determined that O'Connor falsified at least 60 federal individual income tax returns on behalf of 21 taxpayer clients, resulting in a tax loss to the federal government of $184,338 and to the State of New York of $56,830. Subsequent audits of other O'Connor clients identified an additional $105,588 federal tax loss, for a total tax loss of $346,756.

The IRS interviewed 21 of O'Connor's client-taxpayers and collectively they described a process in which they went to the apartment O'Connor worked out of in the Bronx, waited their turn to be seen by her, handed her their W-2, and rarely any other documentation, and then sat while she worked on her computer. Then with very little discussion, she would inform them of the amount of tax refund they could expect, but did not otherwise discuss with her client's their tax returns or what information she was putting on their returns. Moreover, the clients were not provided with a copy of their returns until they came back a few weeks later to pick up their refund checks.

O'Connor's business electronically filed all the completed returns. The fraudulent items reported on the returns were very similar and included false Schedule A expenses such as gifts to charity and unreimbursed employee business expenses. The false items also included head of household status, education credits for non-qualifying taxpayers and substantial expenses on forms Schedule C (Profit or Loss).

Hon. Robert P. Patterson, USDJ                                                                Page 3
November 1, 2013

### IRS Undercover Visit to O'Connor's Apartment

On March 10, 2011, an IRS Undercover Agent (the "UC") went to O'Connor's Apartment and posed as a taxpayer seeking to have his 2010 federal and state tax returns prepared. The UC entered O'Connor's Apartment wearing a concealed recording device which recorded audio and video during the UC's appointment. Initially, the UC was greeted at the entrance by Brigit Myles, O'Connor's adult daughter who worked for O'Connor as a receptionist.

Myles greeted the numerous tax return clients the UC observed coming into and then leaving O'Connor's Apartment during the time he was there. While waiting to be seen by O'Connor, the TSII clients were directed by Myles to take a seat in a small room just inside the entrance to O'Connor's Apartment. When the UC first arrived at O'Connor's Apartment, there were approximately one-half dozen clients ahead of him.

When it came to the UC's turn to have his tax return prepared, he was directed by Myles into a second larger room of the apartment which appeared to be a combination kitchen and living room. In this second room, O'Connor was seated behind a desk which had two computers, an open laptop computer, and a desktop computer with a monitor. Myles directed the UC to take a seat in front of O'Connor's desk. When he sat down, the UC handed O'Connor his Form W-2 (the federal tax form issued by employers and stating how much an employee was paid in a year and how much was withheld by the employer for federal, state and local income and employment taxes). O'Connor took the UC's W-2 and using the desktop computer, entered the figures from the W-2 into a computer tax form. Other than asking if the UC had any dependents, O'CONNOR did not make any inquiries of the UC, nor did the UC volunteer anything regarding possible deductions to be included in the UC's tax returns. Instead, O'Connor and the UC exchanged pleasantries while O'Connor focused her attention on the computer screen in front of her and on phone calls she made while working on the UC's tax return. Despite the absence of any discussion regarding the UC's actual expenses and deductions, the finished tax return O'Connor prepared for the UC included itemized deductions totaling $18,642.00 on Schedule A of the UC's form 1040.

A properly prepared return, based only upon the W-2 provided by the UC, should have resulted in a tax due and owing; instead the return prepared for the undercover agent by O'Connor generated a refund of $4,905. In particular, the

return listed Employee Business Expenses totaling $3,636.00; a $4,000.00 deduction for charitable contributions made by means other than by cash or by check to the Salvation Army; and a $7,094.00 deduction for charitable donations made by cash or check.

When O'Connor finished up with the UC's tax return, she informed him that he was getting a refund of $4,905, and directed him toward her daughter to pay on his way out. Notably, O'Connor did not go over the UC's return with him, nor even print out a copy and provide it to him. Instead, the UC had to make a special request for a copy of his return as it was clear that O'Connor was not providing copies when she finished up with each client. The UC's experience in this regard was consistent with what the IRS would learn later from the O'Connor clients it interviewed, *i.e.,* that they were only given copies of their returns *after* the returns had been filed and they came back to pick up their refund checks from O'Connor's office, usually two weeks later. After the UC's visit to O'Connor's Apartment, the IRS Service Center confirmed that on or about March 16, 2011, the returned prepared for the UC by O'Connor was received by electronic transmission to the IRS.

### The Court Should Impose a Sentence within the Stipulated Range

In pleading guilty, the defendant agreed that the applicable range within which the Court could sentence her was 24-30 months. Although the defendant requests that she be given a non-custodial sentence pursuant to 18 U.S.C. ¶ 3553(a), the Government disagrees. As pointed out by the Probation Office in its "Justification" section in support of its recommendation that the Court impose a 24-month prison sentence, the instant offense represents the third felony conviction for this 61-year-old defendant, and concerns O'Connor defrauding the Internal Revenue Service of $183,488. From 2007 to 2009, O'Connor prepared and filed more than 3,000 income tax returns. At least 60 of the federal income tax returns she filed on behalf of TSII clients contained fraudulent deductions that resulted in the clients improperly receiving tax refund checks.

Moreover, in seeking a non-custodial sentence, while O'Connor acknowledges that her criminal conduct had a "devastating effect" on herself and her family, September 30, 2013 Letter to the Court from Florian Miedel, p. 3., O'Connor utterly fails to comprehend the damage she did to her clients by dragging them, without their knowledge or consent, into her crimes and by submitting fraudulent

Hon. Robert P. Patterson, USDJ                                                                                      Page 5
November 1, 2013

tax returns in their name.* As the facts of this case demonstrate, it is all too easy for a crooked tax return preparer to insert fraudulent deductions into their client's tax returns in order to falsely generate large refunds in order to keep ignorant clients coming back year after year. It would be nice if the tax code were simple enough that everyone could understand it, but the reality is that it is not, and people who hire tax return preparers like O'Connor do so because they do not understand the ins and outs of the tax code. And while such clients surely know that a false deduction for a donation to a charity does not belong on their return, when the tax preparer, like O'Connor, never goes over the return with the client, it is not clear the client would ever notice that one line in what ends up being a stack of pagers provided to them only *after* the returns had been submitted, and they had received their refunds.

Accordingly, because of the circumstances of her crimes and the need for general deterrence of other similarly situated income tax return preparers, the Court should sentence the defendant to a prison term within the stipulated range of 24-30 months.

### The Court Should Order a Lump Sum Restitution Payment

Pursuant to Title 18, United States Code, Section 3664, the Court has discretion to order that restitution be paid in "[a] single, lump-sum payment, [or] partial payments at specified intervals." According to the PSR, the defendant has cash on hand in the amount of $185,149.54 in accounts at HSBC Bank (PSR ¶ 62). Yet, without any discussion of the financial information submitted by the defendant, the Probation Office included its boilerplate periodic payment schedule of 15% of the defendant's gross monthly income. (See PSR at p. 27). This was despite the fact the defendant has no income of her own and is being supported by her husband. Accordingly, such a payment schedule is not appropriate here, and the Government submits that the Court should order the defendant to pay the full amount of restitution immediately in a lump-sum payment (from non-specific sources).

Although the defendant's attorney recently advised the Government that they would object to a lump sum restitution payment, his previous letter to the Court assumed that the defendant's "old age savings" would be used to satisfy the

---

\*   The Government believes that O'Connor's clients were essentially ignorant of the wrongfulness of what O'Connor was doing and if they did realize at some point that she had put something false on their returns, it was only after O'Connor had submitted the return electronically to the IRS. PSR ¶11.

restitution she agreed to pay in connection with her guilty plea, *see* September 30, 2013 Letter to the Court from Florian Miedel, p. 3. In any event, in connection with restitution issues, "[t]he burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant," 18 U.S.C. § 3664(e), and there is no evidence that the defendant needs those funds to live on as the PSR indicates that she is being supported by her husband and that they are living within their means. *See* PSR ¶ 62. \*

---

\* Even if the defendant were to claim now that her circumstances have changed since July when she submitted her financial information to Probation, the Court should still enter the lump sum order because the Court retains jurisdiction to modify the payment schedule to address "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k); *see also United States* v. *Jaffe*, 417 F.3d 259, 267 (2d Cir. 2005) (noting that "the district court retains jurisdiction to amend or adjust the restitution order if there is any material change in [the defendant's] economic circumstances"). Nor would this be different even if she has since dissipated the HSBC funds. *United States* v. *Nachamie*, 93 Fed.Appx. 293, 2004 WL 605270, at \*1 (2d Cir. 2004) (unpublished) (Modification of restitution order, requiring, *inter alia*, that the defendant make an immediate lump sum payment of $60,000, was not warranted based upon reduction of defendant's gross assets from $182,100 at sentencing to $67,000, where such reduction was based in part upon defendant's dissipation of assets). Of course, should the defendant have dissipated her assets since July, the Court should take that into consideration in assessing the validity of her acceptance of responsibility.

Hon. Robert P. Patterson, USDJ                                                                Page 7
November 1, 2013

## Conclusion

      For the reasons stated above, and based upon the stipulations in the plea agreement, the Court should sentence the defendant within the stipulated sentencing range, 24-30 months, and should order that the defendant pay restitution to the IRS in the amount of $183,488, the restitution amount the defendant agreed to pay in the plea agreement. The restitution should be ordered to be paid immediately in a lump sum from non-specified resources.

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney
                                            Southern District of New York

                     By: _____
                          ROBIN W. MOREY
                          Assistant United States Attorney
                          (212) 637-2196

cc (via email):  Florian Miedel, Esq.